**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRUCE DUANE BEARD,

                Plaintiff,

vs.                                                Case No. 3:11-cv-245-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

## **I. Status**

Bruce Duane Beard ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income. Plaintiff's alleged inability to work is "based on chronic obstructive pulmonary disease, degenerative joint disease, diabetes mellitus, hepatitis C and hypertension. . . ." Memorandum in Support of Complaint (Doc. No. 29; "Pl.'s Mem."), filed January 18, 2012, at 2.[2] On August 7, 2007, Plaintiff filed an application for supplemental security income, alleging an onset date of February 15, 2007. Tr. at 58; see also Tr. at 67, 121. Plaintiff's application was denied initially and was denied upon reconsideration. Tr. at 57.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 24), filed November 21, 2011; Order of Reference (Doc. No. 26), entered November 21, 2011.

[2] The undersigned was unable to locate in the administrative transcript (Doc. No. 23; "Tr.") any documents submitted by Plaintiff in which he specifically listed the impairments affecting his ability to work. Apparently, the "paper file" had been lost prior to Plaintiff's hearing before an Administrative Law Judge ("ALJ"). Tr. at 46. When it was determined that the file had been lost, the Social Security Administration reconstructed the file to the best of its ability. Tr. at 46; see Tr. at 20 n.3.

On August 18, 2010, an ALJ held a hearing at which Plaintiff and a vocational expert testified. Tr. at 224-45. At the time of the hearing before the ALJ, Plaintiff was fifty years old. Tr. at 227-28. The ALJ issued a Decision on September 13, 2010, finding Plaintiff not disabled through the date of the Decision. Tr. at 15-22. After receiving additional evidence in the form of a letter from Plaintiff's then-representative and a letter from a neurologist, Tr. at 10, 218-20, 221-23, on November 19, 2010, the Appeals Council denied Plaintiff's request for review, Tr. at 7-9, thereby making the ALJ's Decision the final decision of the Commissioner.

On March 14, 2011, Plaintiff commenced this action under 42 U.S.C. § 1383(c)(3), by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision. On September 16, 2011, an Order was entered (Doc. No. 16) staying this matter pending a ruling by the Appeals Council on Plaintiff's request for additional time to file a civil action. Thereafter, on September 26, 2011, the Commissioner filed an unopposed motion to remand this matter for further administrative proceedings (Doc. No. 17), which was granted by Order dated September 27, 2011 (Doc. No. 18). On October 3, 2011, the Appeals Council granted Plaintiff's request for additional time to file this action. Tr. at 4-5.

On November 18, 2011, the Commissioner moved to reopen the case (Doc. No. 21), the administrative proceedings having been completed. On November 21, 2011, the case was reopened (Doc. No. 25). Thereafter, the parties filed their respective memoranda. See Pl.'s Mem.; Memorandum in Support of the Commissioner's Decision (Doc. No. 30; "Def.'s Mem."), filed March 22, 2012. The case is now ripe for decision.

Plaintiff raises two issues on appeal. The first is whether the ALJ "erred by not fully and fairly developing all the medical evidence," in that he did not await the results of neurology testing – which had not yet been conducted at the time of the hearing – prior to rendering the written Decision. Pl.'s Mem. at 5-6 (emphasis and capitalization omitted). The second is whether the ALJ "erred by not fully and fairly evaluating all the medical evidence[.]" Id. at 6 (emphasis and capitalization omitted). In discussing the second issue, Plaintiff argues that in determining Plaintiff's residual functional capacity ("RFC"), the ALJ failed to account for Plaintiff's "lung mass that produced bleeding in the lung," and the ALJ did not "place[] any definite limitations on [] Plaintiff's ability to walk or stand . . . or his ability to lift and carry" based on Plaintiff's generalized numbness, weakness, and tingling. Id. at 7-8. After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-22. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since March 5, 2007, the application date."[4] Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: chronic obstructive pulmonary disease, degenerative joint disease, diabetes mellitus, hepatitis C and hypertension." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined Plaintiff "has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he must avoid ladders, unprotected heights and the operation of heavy moving machinery. [ Plaintiff] can occasionally bend, crouch, kneel, squat, stoop or crawl. In addition, [ Plaintiff] must work in a clean air environment." Tr. at 18 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work," Tr. at 20 (emphasis and citation omitted), such work being in painting and house remodeling, Tr. at 229. After considering Plaintiff's age, education, work experience, and RFC, the ALJ

---

[4] As previously indicated, the application in the administrative transcript reflects a filing date of August 7, 2007, Tr. at 58, rather than the March 5, 2007 date referred to by the ALJ, Tr. at 17. The approximate five (5) month discrepancy in the filing date is inconsequential, especially given that the ALJ assumed the earlier filing date.

found at step five that "there are jobs that exist in significant numbers in the national economy that [ Plaintiff] can perform," Tr. at 21 (emphasis and citation omitted), including "Information Clerk," "Ticket Taker," and "Furniture Rental Consultant," Tr. at 22. The ALJ concluded that Plaintiff "has not been under a disability . . . since March 5, 2007, the date the application was filed[.]" Tr. at 22.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises two issues, each is discussed in turn.

### A. Fully and Fairly Developing the Medical Evidence

First, Plaintiff contends the ALJ failed to fully and fairly develop the record because he did not await the results of forthcoming neurology testing prior to issuing the written Decision. Pl.'s Mem. at 5-6. As previously noted, the results of such testing (memorialized in a letter) were received by the Appeals Council but were not available to the ALJ. Plaintiff elaborates that the testing "certainly documents the presence of neuropathy and generalized diffuse weakness and numbness." Id. at 5. In addition, Plaintiff states "there was no other evidence in the file that documented the possible reason for his numbness and tingling"; specifically, "[t]here was no examination by a consultative examiner that would shed any light on [ P]laintiff's difficulties." Id. at 5-6.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at

1281). Furthermore, to remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995). Prejudice exists when the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence. Id. at 935.

At the start of the August 18, 2010 hearing, Plaintiff's representative advised the ALJ that Plaintiff was going to be "having nerve conduction studies done on August the 24th and the 31st." Tr. at 226. The representative requested that the record be left open until the results of such studies could be obtained, Tr. at 226, which the ALJ declined to formally grant but then stated, "[I]f I get it before we issue a decision, I will receive it into evidence and evaluate it along with the other evidence in the file," Tr. at 227. When the ALJ issued his written Decision on September 13, 2010 (some two to three weeks after the studies were to have been conducted), he specifically noted the aforementioned exchange and indicated that "as of the date of this decision no test results were furnished."[5] Tr. at 19 n.2. The results of the neurology testing, as memorialized by a letter dated August 30, 2010 and authored by Michael T. Pulley, M.D. ("Dr. Pulley"), were not submitted to the Appeals Council until October 27, 2010. See Tr. at 218, 221-23. The Appeals Council made Dr. Pulley's letter part of the record. Tr. at 10.

Plaintiff had the burden at the administrative level of proving he was disabled. See Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). That Plaintiff did not submit

---

[5] In light of this note, Plaintiff's contention that "[i]t is not clear whether or not this additional evidence was available for the ALJ to review prior to making [his] decision," Pl.'s Mem. at 5, appears incorrect.

the results of the testing prior to the Decision being rendered does not amount to the ALJ abrogating his duty to fully and fairly develop the record. Further, the ALJ was obviously aware of Plaintiff's complaints of numbness, muscle spasms, and tingling prior to rendering the Decision. Plaintiff testified to that effect at the hearing, Tr. at 238, which the ALJ specifically summarized in his Decision, Tr. at 18. Plus, some of the records available to the ALJ documented complaints of numbness of Plaintiff's left leg. See, e.g., Tr. at 131, 175. The ALJ had before him sufficient evidence to make an informed decision; consequently, no consultative examination was necessary. See Ingram, 496 F.3d at 1269 (citing Doughty, 245 F.3d at 1281). Finally, Plaintiff is unable to show his due process rights were violated, which he is required to show to obtain a remand. See Brown, 44 F.3d at 934-35. For due process rights to be implicated, the record would have to contain evidentiary gaps, see id. at 935; given that the Appeals Council accepted Dr. Pulley's letter and made it part of the record, no such gaps exist.

Further, upon review of Dr. Pulley's letter, the undersigned is convinced that it does not render the Commissioner's final decision erroneous. "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." Ingram, 496 F.3d at 1258. The new evidence must be reviewed to determine whether the denial of disability benefits was erroneous. Id. at 1262.

Defendant correctly observes that "[o]ther than establishing a diagnosis for Plaintiff's numbness, Dr. Pulley's [letter] was not very helpful [because] Dr. Pulley did not offer an opinion about any functional limitations Plaintiff may have had." Def.'s Mem. at 6 (citing Tr.

at 221-23). Again, the ALJ was aware of Plaintiff's complaints of numbness and such complaints were documented in the record prior to the Decision being rendered. Thus, Dr. Pulley's letter and the findings contained therein do not render the denial of benefits erroneous. See Ingram, 496 F.3d at 1262.

### B. Fully and Fairly Evaluating the Medical Evidence

Plaintiff next contends that the ALJ did not fully and fairly evaluate the medical evidence before him. Pl.'s Mem. at 6-8. Specifically, Plaintiff assigns error to the ALJ's RFC determination in two respects: (1) an alleged failure to account for Plaintiff's lung mass and bleeding; and (2) an alleged failure to account for Plaintiff's weakness, numbness, and tingling in the lower extremities and upper extremities by failing to place "definite limitations on [ P]laintiff's ability to walk or stand . . or his ability to lift and carry." Id. at 7-8.

In determining an individual's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments . . . ." SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted).

First, as to the alleged failure to account for the lung mass and difficulty breathing, the ALJ specifically discussed in his Decision Plaintiff's testimony that "he could not breathe very well secondary to a lung mass and that when his antibiotics were stopped he began

coughing up blood within 30-days." Tr. at 18. In addition, the ALJ discussed the medical evidence relating to the lung mass. Tr. at 19. As explained in more detail below, when formulating the RFC, the ALJ generally accounted for the issues related to the lung mass and to Plaintiff's chronic pulmonary obstructive disease by limiting Plaintiff to light work with additional restrictions. Tr. at 18. The ALJ also specifically accounted for the issues related to the lung mass by limiting Plaintiff to working "in a clean air environment." Tr. at 18. Plaintiff does not suggest any other limitations the ALJ should have imposed based upon his lung mass, and the undersigned finds no error in this regard.

Second, as to the alleged failure on the part of the ALJ to impose any definite limitations on Plaintiff's ability to walk or stand and lift and carry, the ALJ did impose such limitations by limiting Plaintiff to light work. Tr. at 18. Light work, as defined in the Regulations, necessarily limits an individual to "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm controls." 20 C.F.R. § 416.967(b) (emphasis added). In addition to these restrictions, the ALJ imposed restrictions of avoiding ladders, unprotected heights, and operation of heavy machinery. Tr. at 18. Finally, the ALJ limited Plaintiff to occasionally bending, crouching, kneeling, squatting, stooping, or crawling. Tr. at 18. Contrary to Plaintiff's contention, the

ALJ accounted for Plaintiff's weakness, tingling, and numbness in determining Plaintiff's RFC.[6]

## V. Conclusion

The ALJ fully and fairly developed the record, and he properly evaluated the evidence of record. After a thorough review of the record, the undersigned is convinced that the Commissioner's final decision is supported by substantial evidence.

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on May 31, 2012.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record

---

[6] Plaintiff further contends that the vocational expert who testified at the hearing may not have understood that "light work" was a term of art with a specific definition. Pl.'s Mem. at 8. According to Plaintiff, the ALJ should have "spell[ed] out to the vocational expert the exact parameters of light duty such as the ability to stand and/or walk six out of eight hours and sit for the remainder of the time. Without such explanation it is unclear whether or not the vocational expert and the ALJ were interpreting the term in the same fashion." Id. The undersigned does not find this argument persuasive. While it may be preferable for an ALJ to specifically define the parameters of light work for a vocational expert, as the Commissioner notes, Plaintiff's representative did not lodge any objection or seek clarification on this issue during the hearing. Def.'s Mem. at 10 (citing Tr. at 241). In any event, the vocational expert identified three jobs in the "light work" category that Plaintiff could perform, Tr. at 243-44, demonstrating that he obviously understood the term "light work" as referred to by the ALJ.